IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL J. WARD, et al.,

            Plaintiffs,

    v.

WALTER F. BARNES, et al.,

            Defendants.

Civil Action No. 05-1850 (JBS)

OPINION

APPEARANCES:

Diana Lynn Moro, Esq.
Mark J. Hill, Esq.
MARK J. HILL & ASSOCIATES
400 North Church Street
Suite 250
Moorestown, NJ 08057
    Attorneys for Plaintiffs Michael, Barbara and John Ward

Arnold Malcolm Mellk, Esq.
WILLS, O'NEILL & MELLK
10 Nassau Street
Princeton, NJ 08542
(609) 924-0700
 - and -
F. Michael Daily, Jr., Esq.
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
    Attorneys for Defendant Walter Barnes

Patrick J. Madden, Esq.
MADDEN & MADDEN, PA
108 Kings Highway East
Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389
    Attorney for Defendants James Gallagher, David Tannenbaum,
    Sterling High School District, Sterling High School District
    Board of Education, and Jack McCulley

Lee Harris Eckell, Esq.
POST SCHELL, PC
Overlook Center
2nd Floor
100 Overlook Drive
Princeton, NJ 08540
     Attorney for Defendants Steven E. Gismonde, Sr. and Jane
     Gismonde

## TABLE OF CONTENTS

I.   INTRODUCTION      . . . . . . . . . . . . . . . . . 1

II.  FACTS. . . . . . . . . . . . . . . . . . . . . . . 4

III. MOTIONS FOR SUMMARY JUDGMENT . . . . . . . . . . . 8

     A.   Standard. . . . . . . . . . . . . . . . . . . 8

     B.   Motion by Gismonde Parents. . . . . . . . . . 10

     C.   Motion by Barnes. . . . . . . . . . . . . . . 17

          1.   Count Six: Battery. . . . . . . . . . . 18

          2.   Count Seven: New Jersey Constitutional Claim.. 19

          3.   Count Eight: Intentional Infliction of Emotional
               Distress. . . . . . . . . . . . . . . . . 20

          4.   Count Nine: Negligence Per Se. . . . . . . 25

          5.   Count Ten: Negligence. . . . . . . . . . . 27

          6.   Count Twenty-four: Economic Loss by the Wards. 30

          7.   Damages for Pain and Suffering. . . . . . . 32

          8.   Punitive Damages. . . . . . . . . . . . . . 35

ii

D.    Motion by the Sterling Defendants.. . . . . . . . . .  38

      1.    <u>Whether the Sterling Defendants can be Liable in</u>

            <u>Tort for Barnes's Actions</u>. . . . . . . . . . .  39

      2.    <u>Direct Negligence Claims Against Sterling</u>

            <u>Defendants</u>.. . . . . . . . . . . . . . . . . .  41

      3.    <u>Section 1983 Claims Against Sterling Defendants</u>

            . . . . . . . . . . . . . . . . . . . . . . . .  44

      4.    <u>IDEA Claims</u>. . . . . . . . . . . . . . . . . .  50

E.    Plaintiffs' Motion for Summary Judgment.. . . . . .  50

      1.    <u>No Basis for Claims</u>. . . . . . . . . . . . . .  51

      2.    <u>Battery</u>. . . . . . . . . . . . . . . . . . . .  51

      3.    <u>Negligence</u>.. . . . . . . . . . . . . . . . . .  52


IV.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . .  53

**Simandle, District Judge:**

**I.    INTRODUCTION**

Plaintiff Michael Ward, a student with cerebral palsy, was allegedly assaulted by fellow students in his high school gym class in 2002 at the direction of his teacher.  Michael Ward alleges school authorities did nothing to prevent this and other assaults.  Michael and his parents bring claims under federal and state law against the students, the teacher, and various school district employees and officials in the Sterling High School District, seeking money damages.

Before the Court are the motions for summary judgment by Defendants Jane Gismonde and Steven Gismonde, Sr. ("the Gismonde parents" or "the Gismondes") [Docket Item 72]; Defendant Walter Barnes ("Barnes") [Docket Item 73]; Defendants James Gallagher, Jack McCulley, Sterling High School District Board of Education, Sterling High School District and David Tannenbaum ("the Sterling Defendants")[Docket Item 74]; and by Plaintiffs Barbara Ward, John Ward, and Michael J. Ward ("the Wards" or "Plaintiffs") [Docket Item 75].  The Court heard oral argument and reserved decision.  For the reasons explained below, the Court shall grant the motions in part and deny them in part.

Plaintiffs' Amended Complaint contains twenty-four counts of allegations against the defendants.

1

Counts One through Four allege claims by Michael Ward against Walter Barnes in his capacity as an employee of or agent for Sterling High School; in other words, they assert claims against Sterling High School Board of Education and Sterling High School District for Barnes's conduct under the theory of respondeat superior.

Counts Six through Ten are claims by Michael Ward against Barnes in his individual capacity: Count Six alleges battery, Count Seven alleges a New Jersey Constitutional claim, Count Eight alleges intentional infliction of emotional distress, Count Nine alleges negligence per se, and Count Ten alleges negligence.

Counts Eleven and Twelve are claims by Michael Ward against Sterling High School District Board of Education.  Count Eleven alleges a claim pursuant to 42 U.S.C. § 1983 that "Plaintiff Michael Ward has been deprived by Defendant Sterling High School District Board of Education, while acting under color of state law, of his rights, privileges and immunities secured by the Constitution and laws of the United States of America and the State of New Jersey; specifically, his liberty interest in bodily integrity and freedom from fear, intimidation, beatings and physical attacks perpetrated by Defendants, Barnes, and Steven E. Gismonde, Jr., Joseph Van Blarcom, Kyle Hunt and John Does 4-10." (Am. Compl. ¶ 193.)  Count Twelve is a negligence claim against the Sterling High School District Board of Education.

Counts Thirteen and Fourteen allege the same claims as in Eleven and Twelve but against "the Sterling High School District." It is not clear how this defendant differs from the Sterling High School District Board of Education.

Count Fifteen is a claim pursuant to 42 U.S.C. § 1983 by Michael Ward against David Tannenbaum individually and in his official capacity as principal of Sterling High School, asserting the same deprivation of constitutional liberty described above. Count Sixteen is a claim by Michael Ward against David Tannenbaum individually and in his official capacity as principal of Sterling High School, asserting negligence.

Count Seventeen is a claim by Michael Ward against Jack McCulley, individually and in his capacity as Superintendent of Sterling High School District, pursuant to 42 U.S.C. § 1983, for establishing customs and policies that violated Michael Ward's constitutionally-protected liberty interest in bodily integrity. Count Eighteen is also a claim by Michael Ward against McCulley in his individual and official capacities, asserting negligence for, among other things, his failure to remove Barnes from the classroom, failure to discipline offending students, failing to supervise administrators to prevent the beatings, failing to adequately train personnel, and failing to provide adequate security.

3

Counts Nineteen and Twenty are claims alleging violation of
the Individuals with Disabilities Education Act ("IDEA") against
Defendants Sterling High School District Board of Education and
Gallagher, respectively.

Count Twenty-Three asserts a claim of negligence against
parents of students who allegedly assaulted Plaintiff Michael
Ward.

In the twenty-fourth count, which is incorrectly labeled
Count Twenty-Eight, Barbara and John Ward, Michael's parents,
assert a claim for economic loss against all defendants.  They
claim that because of the acts and omissions of the defendants,
John Ward missed work and lost wages to care for his son.

## II.  FACTS

Plaintiff Michael Ward was a student at Sterling High School
in a program exclusively for students with behavioral
disabilities in May of 2002, when the incident that sparked this
litigation occurred.  Plaintiffs claim that during a gym class
that Defendant Barnes was supervising on May 9, 2002, Barnes told
the students to "get" Michael Ward, and that they hit, kicked and
punched Ward until another teacher came into the room to stop it.
(M. Ward Dep. at 143-45.)   Michael Ward was unable to recall, at
his deposition, which students were involved in the incident,
although he believed Steven Gismonde, Jr. (son of Defendants the
Gismonde parents) was involved.  A former Vice-Principal at

4

Sterling High School, Reno Domenico, testified that Steven Gismonde was involved in the incident.  (Domenico Dep. at 81, Pl.'s Ex. O.)  Paul Reagle, another teacher at Sterling High School, testified that he witnessed three students, Defendants Kyle Hunt, Steve Gismonde and Joe Van Blarcom, crouched over Michael and punching him in the presence of Defendant Barnes, during this physical education class.  (Reagle Dep. at 106-09.)

Plaintiffs claim that these students in Michael's class attacked him at the direction of their teacher, Defendant Barnes. Plaintiffs claim that the beating caused serious physical and emotional injuries, including lasting psychological problems.

Plaintiffs claim that Michael had been the target of attacks by students at Sterling High School for some time prior to this incident.  In addition to any emotional or behavioral problems Michael Ward may have, he also has cerebral palsy, which made it difficult for him to walk and was obvious to others.  (Barnes Dep. at 130, M. Ward Dep. at 119-20.)  Initially, Michael did not complain to his parents or teachers about the beatings he was receiving at school because he feared they would only get worse.

However, Plaintiffs allege that teachers and school administrators were aware that punching and other aggressive physical behavior was commonplace in the program in which Michael had been placed.  Defendant Walter Barnes was one of the teachers in the program for students with behavioral disabilities.

(Tartaglione Dep. at 45.) (This program was referred to during Barnes's deposition as "ED self contained," for emotionally disturbed students, and all parties acknowledge that the students referred to it as "the Box.")[1]  Barnes was aware that students in his class hit one another, but considered this to be "horseplay" and admitted that he gave his students more leeway before disciplining them than he would have given to students in the mainstream population.  (Barnes Dep. at 132.)  Michael testified that Barnes witnessed some of the beatings he suffered prior to May 2002 and did nothing to stop them.  Barnes testified that he complained and sought assistance from the Sterling High School administration and others in monitoring and disciplining the students, both inside and outside the classroom.  (Barnes Dep. at 137-38, 146-48, 162.)  Barnes specifically mentioned that Steve Gismonde Jr., along with Joe Van Blarcom and Kyle Hunt, were "out of control", more likely to hit than other students were, and "did whatever they wanted."  (Barnes Dep. at 134-35.)  Barnes testified that neither he nor the Administration were interested in providing an education to the emotionally disturbed students, but rather simply wanted to "get[] through the day." (Barnes Dep. at 167.)  Barnes also testified that he reported disciplinary

---

[1]  Barbara Ward testified that when she met with school officials about transferring Michael into this program, Defendant Gallagher said that it would "make a man out of him."  (B. Ward Dep. at 96-97.)

6

infractions in the classroom to Defendant Gallagher and that no disciplinary action or counseling occurred.  (Barnes Dep. at 174-76.)

In January of 2002, Barbara Ward, Michael's mother, called the school to speak to a member of the Child Study Team at Sterling High School, Nancy Tartaglione, about bruises she had seen on Michael's body.  (Tartaglione Dep. at 39-40; B. Ward Dep. at 118-19, 125.)  Ms. Tartaglione testified that she spoke to Mr. Gallagher and Mr. Regale, one of Michael's teachers, who also spoke with Mr. Barnes, and none of them indicated any awareness of where Michael's bruises could have come from.  (Tartaglione Dep. at 51-52, 44-46.)  Ms. Tartaglione also testified that she spoke with Michael who indicated that his mother was unnecessarily worried and that there was no problem to report. (Id. at 41-42.)  Ms. Tartaglione testified that she did not speak to anyone else about the alleged bruising and did not make any notation in Michael's file about it.  (Id. at 51-52.)

Michael testified that Defendant Gallagher, head of the Child Study Team, spoke to him about his bruising, that Michael indicated it was caused by other students who were in "the box" with him as well as in a carpentry class, which he had switched out of (M. Ward Dep. at 106-07), and that Mr. Gallagher indicated he would take care of it (M. Ward Dep. at 102-05).  Michael also testified that Gallagher subsequently called Barnes out of class

7

to speak with him (M. Ward Dep. at 103-05) and that the other students learned about his mother's complaints, which caused increased beatings in retaliation.

## III. MOTIONS FOR SUMMARY JUDGMENT

### A.   Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the

8

face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." <u>U.S. v. Premises Known as 717 South Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

The summary judgment standard does not change when, as here, the parties have filed cross-motions for summary judgment. <u>See Appelmans v. City of Phila.</u>, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one

> is rejected the other is necessarily justified
> or that the losing party waives judicial
> consideration and determination whether
> genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d
555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc.,
402 F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions
for summary judgment reveals no genuine issue of material fact,
then judgment may be entered in favor of the party deserving of
judgment in light of the law and undisputed facts.  See Iberia
Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998)
(citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d
139, 145-46 (3d Cir. 1988)).

**B.   Motion by Gismonde Parents**

Plaintiffs assert in Count Twenty-Three of the Amended
Complaint that the Gismonde parents are responsible for injuries
their minor son caused Plaintiffs, under a negligence theory.
Specifically, Plaintiffs allege that the Gimondes knew or should
have known that their son repeatedly beat Michael Ward and that
therefore, they are liable for failing to prevent the physical
attacks, including the incident in May 2002.

The Gismondes move for summary judgment on two grounds.
First, they allege that they are entitled to summary judgment
because there is no evidence that would indicate they knew or
should have known that their son was harming Plaintiff Michael
Ward.  Second, they claim that even if there was such evidence,

10

they would be entitled to parental immunity for any alleged lack
of supervision.  For the reasons explained below, the Court shall
grant the Gismondes' motion for summary judgment.

On the Gismondes' motion for summary judgment, the Court
must view the facts in the record in the light most favorable to
Plaintiffs.  Principal Tannenbaum testified that there were
disciplinary problems with Steven Gismonde during his time at
Sterling, that he was involved with the juvenile justice system
and that the Gismonde Parents were aware both of the problems at
school and with the police. (See Pl's Ex. I, Tannenbaum Dep. at
202-04).  Although Tannenbaum could not recall whether any of the
incidents involving Steven Gismonde included violence, he
testified that he recalled meeting with the Gismonde parents
between two and five times each year their son was at Sterling
about his behavior problems.  (Id. at 204.)

In their briefing, Plaintiffs allege that Barnes testified
that he spoke to the Gismonde parents about Steven's discipline
problems prior to the incident at the center of this lawsuit and
cite to page 240 of Barnes's deposition transcript. (Pl's
Gismonde Br. at 6) However, that page does not exist because the
deposition ends at page 198.  The Court has reviewed Barnes's
testimony and finds only that it provides evidence that Barnes
reported Steven Gismonde's misconduct, including his tendency to
hit other students, to members of the Sterling High School Child

11

Study Team, but that there is no evidence in Barnes's testimony of any conversations with the Gismonde parents about Steven Gismonde Jr.'s allegedly violent misconduct.  Moreover, the Court was not able to locate any point in the testimony that describes any communication between Barnes and the Gismonde parents relating to his hitting other students or mistreating Michael Ward in any way.

In addition, at oral argument Plaintiffs argued that evidence in Exhibit O, Reno Domenico's deposition, along with testimony from Barnes, showed that Steven Gismonde Jr. had assaulted another boy, nick-named "Tug Boat," with so-called "turtle taps" and that the school failed to discipline Gismonde, Jr. for this.[2]  Plaintiffs cited to no particular page in the testimony that reveals this fact, other than the questioning of Domenico about whether he was aware of such an incident, to which he replied that he was not.  (Domenico Dep. at 109.)  More importantly, there has been no evidence presented to this Court that the Gismondes were notified of a fight between their son and "Tugboat" or of any other assaultive conduct by Gismonde, Jr.

---

[2]  At oral argument, Plaintiffs handed the Court a substitute "Exhibit O" that includes letters composed by Barnes and Gismonde, Jr.  It is not clear who received these letters and they appear to be hearsay.  In any event, one indicates an assault by Gismonde Jr. on "Tugboat" for which he claims he was not disciplined, but which took place after May 9, 2002; therefore it is not relevant to this litigation.

Because there is no evidence before the Court from which a reasonable jury could find the Gismonde parents knew or should have known of the injuries their son was allegedly causing Michael Ward at school, or that he was behaving violently in general, the Court shall grant the motion for summary judgment as to the Gismonde parents.  Plaintiffs have only come forward with evidence indicating that the Gismondes were notified that Steven Gismonde, Jr. was in trouble at school for non-violent conduct, such as tardiness, smoking and skipping detention.  No reasonable jury could find the Gismondes were liable for the assaults at issue here on that evidence.

Further, even if this evidence was sufficient to state a prima facie claim of negligence on behalf of the Gismondes, the Court would find the Gismonde parents immune from such a claim under New Jersey law.  The doctrine of parental immunity applies when the underlying conduct involves an exercise of parental authority or the provision of customary child care and the circumstances do not suggest that the parent has acted willfully, wantonly, or recklessly.  Buono v. Scalia, 179 N.J. 131, 134 (2004).  "For behavior to fall within that definition, a parent must be 'conscious . . . that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, [the parent] consciously and intentionally does some wrongful act or omits to discharge some duty which produces

the injurious result.'"   Id. at 138 (quoting Prosser, Torts, § 34

at 184-86) (4th ed. 1971)).

    The New Jersey Supreme Court,

> explained that narrow concept of [parental]
> immunity in Foldi [v. Jeffries, 93 N.J. 533
> (1983)]. There, the Court held that the
> parental immunity doctrine would "preclude
> liability in cases of negligent supervision,
> but not for a parent's willful or wanton
> failure to supervise his or her children." Id.
> at 549. Further, the Court stated that the
> doctrine would be applicable only in "special
> situations that involve the exercise of
> parental authority and customary child care."
> Id. at 551. The Court reached its
> determination by evaluating two competing
> principles, still relevant today. The first
> tenet is "that liability ordinarily should be
> imposed upon those who wrongfully injure
> others." Id. at 544. The second is that
> parents have a right to raise their children
> in accordance with their own beliefs without
> undue interference from the courts. Id. at
> 545.

Buono, 179 N.J. at 137.

    "Ultimately, whether conduct implicates parental

decision-making, or whether it satisfies the 'willful or wanton'

exception to the immunity doctrine, will depend on the totality

of circumstances in a given case, subject to a fact-sensitive

analysis by the trial judge and, when warranted, by a jury."

Id. at 138.  Because there is no genuine dispute of fact in the

evidence before the Court as to what the Gismonde parents knew,

just a dispute about what they should have done in response to

that information, the Court can resolve on summary judgment

14

whether their acts, or failures to act, should come within the parental immunity exception.  Plaintiffs argue vigorously that there is a dispute of fact, but have not provided any affirmative evidence of their claim that the Gismondes knew or should have known their son was a danger to Michael Ward.

The New Jersey Supreme Court has described as "useful" the analytical framework used to determine the application of parental immunity on a summary judgment motion in Murray v. Shimalla, 231 N.J. Super. 103 (App. Div. 1989).  See Buono, 179 N.J. at 139.  First, the trial judge must determine what acts or omissions by the parent a fact finder could reasonably find were the proximate cause of the Plaintiff's injury.  Murray, 231 N.J. Super. at 106.  Next, the judge must determine whether that conduct is protected by parental immunity, "i.e., whether it involves the exercise of parental authority or the provision of customary child care."  Id.  "If it does, the next step is to determine whether the conduct constitutes a lack of parental supervision.  If it does, the final step is to determine whether a fact finder could reasonably find that the conduct was willful or wanton thereby removing it from the immunity."  Id.

In this case, the Court has found there are no acts or omissions by the Gismonde parents that a fact finder could reasonably determine to be the proximate cause of Michael Ward's injury.  Although Plaintiffs allege the Gismonde's son was the

15

actual cause of his harm, and that the Gismondes should have
known their son had violent tendencies, it is not clear what
Plaintiffs allege the Gismondes reasonably could have or should
have done to prevent their high-school aged son from harming
Michael.  Indeed, Plaintiffs' case turns upon their assertion
that Barnes was the proximate cause of the harm to Michael Ward.
They make only a vague reference to a lack of discipline in their
claim against the Gismonde parents.

But, assuming for the sake of argument that the Gismonde
parents proximately caused harm to Michael Ward by failing to
sufficiently discipline Steven Gismonde, Jr., this so-called
failing is certainly within the range of customary child care and
parental authority.  The Gismonde parents, as part of their
parental duties, had to decide whether and how much to discipline
their emotionally disturbed teenaged son for allegedly aggressive
behavior at school, keeping in mind that he was under the
supervision of a probation officer and was, at the time of the
alleged conduct, also under the supervision of the school in a
specially, supposedly more supportive program tailored for his
disabilities.  Plaintiffs seem to concede the "customary child
care" prong by arguing only that immunity is not available for
the Gismondes because their conduct falls within the willful,
wanton and reckless exception to immunity.

There is no evidence supporting the application of that exception.  Plaintiffs have provided no evidence that the Gismondes knew of any harm their son was causing to Michael Ward or other students at school.  The Gismondes remain immune unless there is evidence that (1) they were conscious that injury would likely or probably result from their failure to discipline their son, (2) they intentionally omitted to discharge some duty which produced the injurious result, and (3) they acted with reckless indifference to the consequences.  See Buono, 179 N.J. at 138.  There is no evidence of any such conduct by the Gismondes here.  Therefore, the Court must grant the Gismondes' motion for summary judgment.  Judgment will be entered in favor of the Gismonde parents upon all claims.

### C.   Motion by Barnes

Defendant Walter Barnes moves for summary judgment on Counts One through Ten of the Amended Complaint, all the claims against Barnes both individually and as an agent for the school.  It appears, however, that Counts One through Five are claims to hold Sterling High School liable for Barnes's conduct.  Because he is not the named defendant under those counts, the Court will examine his motion for summary judgment only as to Counts Six through Ten, the counts that seek to hold him individually liable.

17

It appears that there is a material dispute of fact whether Barnes witnessed and/or instigated assaults by emotionally-disturbed students on Plaintiff Michael Ward; therefore, the Court shall deny Barnes's motion for summary judgment in part, as discussed below.

     1.   <u>Count Six: Battery</u>

Michael Ward testified that prior to the beating, Mr. Barnes told the other students to "get" him and that Barnes was aware of and had witnessed students beating Michael in the past but had failed to intervene or discipline the students.  A jury evaluating this evidence could reasonably decide that Barnes was liable for the harm that befell Michael Ward.  That harm, a reasonable jury could find, was a battery.  <u>See</u> <u>Perna v. Pirozzi</u>, 92 N.J. 446, 461 (1983) ("Any non-consensual touching is a battery.").

The New Jersey Supreme Court has used the Restatement (Second) of Torts' explanation of concert liability to describe aiding and abetting liability under the New Jersey Law Against Discrimination.  <u>Tarr v. Ciasulli</u>, 181 N.J. 70, 84-85 (2004).  The Restatement's analysis applies even more aptly here:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or

18

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts, § 876 (1979).  At oral argument, counsel for Barnes conceded that this "aiding and abetting" theory of liability is the law in New Jersey.

Viewing the evidence in the light most favorable to Plaintiff on Barnes's motion, a jury could find Barnes liable under any of the three theories listed in the Restatement section above.  If a teacher actually instigates a beating, by students against another, he can be liable for battery.  Thus, even though there is no evidence that Barnes, himself, touched Michael Ward, the Court must deny the motion for summary judgment on Plaintiff's aiding and abetting battery claim against Barnes in Count Six.

2.   Count Seven: New Jersey Constitutional Claim

Barnes alleges that there is no private right of action for a violation of the New Jersey Constitution, as asserted in Count Two, because tort remedies were available for the alleged conduct.  At oral argument Plaintiffs conceded that this claim

19

was not viable.  Therefore, the Court shall grant summary
judgment to Barnes on Count Seven.[3]

      3.   <u>Count Eight: Intentional Infliction of Emotional
Distress</u>

Barnes alleges that there is no evidence supporting the
claim against him in Count Eight for intentional infliction of
emotional distress.  Plaintiffs oppose, pointing to the testimony
of Michael Ward and the findings of the Department of Youth and
Family Services ("DYFS"), which investigated Barnes after the May
2002 incident and found, in October 2002, that Michael Ward had
suffered abuse and neglect at the hands of Barnes.  Barnes argues
that the DYFS findings are confidential and not admissible on
this motion for summary judgment.  This Court may only consider
admissible evidence in determining whether a genuine issue of
material fact exists under Rule 56(c), Fed. R. Civ. P.  Although
it is not clear whether the DYFS letter (Pl.'s Ex. J in Opp. to
Gismonde Mot.), which documents investigatory rather than
adjudicatory findings, should be admissible at trial[4], Michael

---

    [3]  For the same reason, the Court shall grant summary
judgment to the Sterling Defendants on Count Two.

    [4] Of course, this letter is an out-of-court statement
submitted for the truth of the matters stated therein.
Accordingly, it is hearsay and Plaintiff has not made any
argument why it should nevertheless be admissible.  Apart from
determining that the alleged conduct amounts to neglect, the
letter merely states facts that should be in the knowledge of
Michael Ward and any other witness to the assault on him.

Ward's testimony creates a genuine issue of material fact
sufficient to preclude summary judgment on the intentional
infliction of emotional distress claim without having to resolve
the admissibility of the letter.

The parties agree on the law governing intentional
infliction of emotional distress claims:

> Generally speaking, to establish a claim for
> intentional infliction of emotional distress,
> the plaintiff must establish intentional and
> outrageous conduct by the defendant, proximate
> cause, and distress that is severe.
> Initially, the plaintiff must prove that the
> defendant acted intentionally or recklessly.
> For an intentional act to result in liability,
> the defendant must intend both to do the act
> and to produce emotional distress. Liability
> will also attach when the defendant acts
> recklessly in deliberate disregard of a high
> degree of probability that emotional distress
> will follow.
>
> Second, the defendant's conduct must be
> extreme and outrageous. The conduct must be
> "so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of
> decency, and to be regarded as atrocious, and
> utterly intolerable in a civilized community."
> Third, the defendant's actions must have been
> the proximate cause of the plaintiff's
> emotional distress. Fourth, the emotional
> distress suffered by the plaintiff must be "so
> severe that no reasonable man could be
> expected to endure it." By circumscribing the
> cause of action with an elevated threshold for
> liability and damages, courts have authorized
> legitimate claims while eliminating those that
> should not be compensable.
>
> The severity of the emotional distress raises
> questions of both law and fact. Thus, the
> court decides whether as a matter of law such
> emotional distress can be found, and the jury

21

> decides whether it has in fact been proved.
> When conduct is directed at a third party,
> proof of bodily harm is required, but when the
> intentional conduct is directed at the
> plaintiff, he or she need not prove any
> physical injury. It suffices that the conduct
> produce emotional distress that is severe.

<u>Buckley v. Trenton Sav. Fund Soc.</u>, 111 N.J. 355, 369-67 (1988)
(citations omitted).

Plaintiffs have presented evidence that Barnes intentionally caused the students to beat Michael Ward and that he recklessly disregarded the physical harm that this conduct would cause. There is evidence that Barnes instructed the students to "get" Ward after Barnes had called Ward "a cripple."  Michael Ward was a freshman in high school who was allegedly repeatedly beaten by his peers, had emotional problems and disabilities, and trouble making friends.  A jury could find that Barnes was the teacher supervising Michael and his alleged attackers, and that Barnes intended or recklessly disregarded that the beating would cause Michael Ward emotional distress.  There is also sufficient evidence that the conduct by Barnes, an adult charged with the care of emotionally disturbed teenagers, engaged in outrageous conduct, beyond all bounds of decency, if, as alleged, he exploited their social and behavioral problems to enlist them to cause physical harm to one another.

The closer issue is whether Plaintiffs have submitted evidence from which a jury could find, as New Jersey law

22

requires, that Michael Ward suffered emotional distress that is so severe no reasonable person should be required to endure it. Michael Ward admittedly received no psychological treatment immediately after the incident.  However, he testified that he has a lasting fear of encountering Barnes and the students who beat him, which causes him to refrain from going outdoors alone and to avoid social situations.  He also reported nightmares about the incident.

Plaintiffs have also submitted (under seal) two reports of evaluations obtained during the course of this litigation that purportedly show the level of emotional distress Michael suffers. The first report was from Thomas Swirsky Sacchetti, Ph.D. (Ex. R to Pl. Opp. to Mots. of Barnes and Sterling Defs.), a neuropsychologist who examined Michael on December 12, 2006.  Dr. Sacchetti concluded, "[b]y virtue of [Michael Ward's] objective personality testing as well as self-reported symptoms during clinical interview and testing, [that] he meets criteria for Post Traumatic Stress Disorder (chronic) (DSM-IV 309.81)." (Id. at 5.) The second evaluation was performed by Marni Axelrad, Ph.D., Psychology Fellow at the Alfred E. duPont Hospital for Children and David Sheslow, Ph.D., a Pediatric Psychologist at duPont, on June 23 and 25, 2004.  (Ex. S to Pl. Opp. to Mots. of Barnes and Sterling Defs.)  Drs. Axelrad and Sheslow administered a battery of psychological and neuropsychological tests and interviewed

Michael and his mother.  They also diagnosed Michael with Post

Traumatic Stress Disorder ("PTSD") as well as depression and

agoraphobia.  (Id. at 9.)  While the psychologists also found

Michael to suffer from other problems, such as mild learning

disabilities and possible Oppositional Defiant Disorder, they

concluded that his PTSD and agoraphobia were caused by the trauma

of the beatings he suffered at school, including his sense that

adults were betraying him or unable to protect him during those

beatings.  A reasonable jury could find that Barnes was the cause

of both of those psychological injuries.

     Based on the evidence in Michael's testimony and mental

health records, a reasonable jury could determine that he is

suffering emotional distress so severe that a reasonable person

could not be expected to endure it and that the distress was

proximately caused by Barnes' conduct.

          Severe emotional distress means any type of
          severe and disabling emotional or mental
          condition which may be generally recognized
          and diagnosed by professionals trained to do
          so, including . . . posttraumatic stress
          disorder.

Taylor v. Metzger, 152 N.J. 490, 515 (1998) (citations omitted).

As in Taylor, here the psychologists'

          diagnosis that plaintiff suffered
          post-traumatic stress disorder permits a
          rational factfinder to conclude that [he]
          suffered severe emotional distress. On the
          other hand, a jury would be free to reject
          plaintiff's psychiatric evidence and conclude

>                that [he] did not suffer severe emotional
>                distress.

<u>Id.</u>

That dispute of facts requires the Court to deny Barnes's motion for summary judgment as to the claim against him for intentional infliction of emotional distress in Count Eight.

4.    <u>Count Nine: Negligence Per Se</u>

_____In Count Nine of the Amended Complaint, Plaintiffs allege that DYFS found that Barnes was guilty of neglect that caused harm to Michael Ward and that this finding should suffice to constitute negligence per se.  Plaintiffs rely on a letter issued by DYFS during its investigation.  Barnes argues that Plaintiffs may not use the DYFS record to allege negligence per se because DYFS proceedings are confidential.

The negligence per se claim implicates two issues: (1) whether the DYFS letter is a dispositive finding, binding on this Court, that neglect occurred; and (2) whether proving a violation of N.J. Stat. Ann. § 9:6-1 amounts to negligence per se.  Because the Court answers both of those questions in the negative, it shall grant Barnes's motion for summary judgment on Count Nine.[5]

---

[5]  Accordingly, the Court shall also deny Plaintiffs' motion for summary judgment on this claim.  This Court does not find that the Legislature intended that violation of the child-abuse statute constitutes negligence per se. Further, the New Jersey Supreme Court has conclusively found that failure to report child abuse cannot constitute civil negligence per se.  <u>J.S. v. R.T.H.</u>, 155 N.J. 330, 349 (1998).  Accordingly, Plaintiffs' motion for summary judgment on Counts Four and Nine are denied and those

First, the DYFS finding is not the kind of finding to which
New Jersey courts would apply collateral estoppel effect and,
therefore, the Court is not bound by the letter.  See Olivieri v.
YMF, 186 N.J. 511 (2006) (collateral estoppel not warranted for
issues determined at unemployment compensation hearings).  This
letter determination has none of the safeguards or processes of
an adjudicatory proceeding and was apparently a part of an
investigatory phase of a longer process.  The parties have
agreed, in a telephone conference after oral argument, not to
seek admission in this Court of any additional documents from
that administrative process.

Second, assuming for the sake of argument that the DYFS
letter is nonetheless admissible into evidence, which is
disputed, and that a jury could therefore consider it to
determine that Barnes violated laws against neglect, the Court
must decide whether that would permit a finding of negligence per
se in this case.  When applying New Jersey law, this Court must
predict what the New Jersey Supreme Court would do if presented
with that question.  Kowalsky v. Long Beach Twp., 72 F.3d 385,
388 (3d Cir. 1995).  It appears that the New Jersey Supreme Court
would not find that violation of such child abuse and neglect
laws constitute negligence per se.  As the New Jersey Supreme

_____

claims are dismissed, even insofar as they may have sought to
hold the Sterling Defendants liable.

Court explained in a case alleging failure to report sexual abuse of a child:

> We do not conclude that the Legislature intended that the child-abuse reporting statute constitute an independent basis for civil liability or that its violation constitute negligence per se. Nevertheless, because the protections provided, the evils addressed, and the obligations imposed by the reporting statute parallel those that would be relevant in recognizing the existence of a duty as a basis for a civil remedy, we determine that a violation of the statute may constitute evidence of negligence in circumstances such as those presented in this case.

J.S. v. R.T.H., 155 N.J. 330, 349 (1998). Similarly, this Court finds that evidence of neglect is not negligence per se, it is only admissible to show negligence – that is, if the evidence is otherwise admissible, a finding the Court need not make now because the letter does not bring any facts into dispute that are not already in dispute on the rest of the record.

Because the Court is not bound by the conclusions in the DYFS letter and because the Court finds that evidence that an individual violated N.J. Stat. Ann. § 9:6-1 does not provide a proper legal basis for a negligence per se claim, the Court shall grant Barnes's motion for summary judgment as to Count Nine.

    5.   Count Ten: Negligence

Barnes also moves for summary judgment on Plaintiffs' negligence claim, arguing that there is insufficient evidence

that he breached his duty of care to Michael.  Although Barnes concedes he had a duty, he argues that because such "rough-housing" had not in the past escalated to the degree it did on May 9, 2002, he had no reason to know the injuries suffered would occur.  Barnes claims that he did not direct the beating and that he stopped it as soon as he became aware of it.

There are numerous material disputes of fact as to what Barnes knew or should have known that preclude summary judgment on the negligence claim against him.

Although Barnes argues that he is immune from liability for conduct that was merely negligent pursuant to the New Jersey Tort Claims Act, he points only to an exception, N.J. Stat. Ann. § 59:3-14, and argues that it does not permit claims for negligence.  But he must first identify which statutory provision provides him immunity before the exception becomes relevant.

The Tort Claims Act provides broad immunity to public entities from tort claims, but more limited immunity for public employees.  The immunities available to public employees, generally, are detailed in N.J. Stat. Ann. § 59:3-2:

> a. A public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him;
>
> b. A public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;

c. A public employee is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;

d. A public employee is not liable for the exercise of discretion when, in the face of competing demands, he determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public employee was palpably unreasonable.

Nothing in this section shall exonerate a public employee for negligence arising out of his acts or omissions in carrying out his ministerial functions.

"When immunity is, as here, sought by a public employee N.J.S.A. 59:3-2 governs." Longo v. Santoro, 195 N.J. Super. 507, 515 (App. Div. 1984). Barnes assumes, without arguing, that his alleged negligent conduct in this case[6] falls within one of the categories that is immunized. N.J. Stat. Ann. § 59:3-14 is merely an exception to public employees' immunity provided by N.J. Stat. Ann. § 59:3-2, which the Court need not analyze unless Defendant Barnes argues with citation to some authority, on his motion for summary judgment, that the immunity statute applies to him. Barnes has not even indicated which category of immunity he

---

[6] Although the thrust of Plaintiffs' arguments is that Barnes acted willfully, they are permitted to plead in the alternative.

seeks to invoke.  Clearly subsections b, c and d do not apply to Plaintiffs' allegations.

Therefore, assuming Barnes is seeking immunity under subsection a, he must show that the alleged failures to supervise in this case were "discretionary decisions" i.e., "'actual, high-level policymaking decisions' or 'basic policy determinations.'" Longo v. Santoro, 195 N.J. Super. 507, 515 (App. Div. 1984) (quoting Costa v. Josey, 83 N.J. 49, 54-55 (1980), which interpreted the analogous provision for public entities).

> A basic policy decision [i]s "the type made at the planning, rather than the operational level of decision making. Moreover, immunity is contingent upon proof that discretion was actually exercised at that level by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice."

Id.

Barnes's alleged conduct in failing to supervise students cannot satisfy this test, viewing the facts in the light most favorable to Plaintiffs, and therefore he is not entitled to the immunity for discretionary decisions granted by N.J. Stat. Ann. § 59:3-2(a).

Having failed to identify any proper basis for immunity, Barnes is not entitled to summary judgment on Count Ten.

6.   Count Twenty-four: Economic Loss by the Wards

30

Barnes argues that the Ward parents cannot claim economic loss related to Michael's need to stay home after the May 9, 2002 beating because the evidence does not support a jury finding that the wage loss was due to this need.  Rather, Barnes argues, John Ward testified that he left work for other reasons and that Barbara Ward was home with Michael during part of John's period of unemployment.  The Wards are seeking compensation for the period between September of 2002 and the Spring of 2003.  John Ward testified that he left his job with NJ Brake in September of 2002 for reasons unrelated to this litigation or Michael's needs. (J. Ward. Dep. at 90:9-13.)  But he also testified that he decided not to look for work thereafter, until the Spring of 2003, because he decided Michael needed him at home.  (Id. at 90:14-23.)  Specifically, John Ward testified that Michael was paranoid that students or Barnes would come to the house and harm him.  (Id. at 91.)  While one may be skeptical that Mr. Ward's period of wage loss herein coincides with his job loss in September of 2002, the allegation is not so fatuous or implausible that it can be disregarded in a summary judgment motion.

John Ward's testimony provides some evidence of lost wages proximately caused by the need to protect and care for Michael as a result of injuries allegedly caused by Barnes.  Because Barnes's argument seems to turn completely on the credibility of

this testimony, which is an evaluation a jury must make, the
Court must deny summary judgment to Barnes on Count Twenty-Four.

7.   <u>Damages for Pain and Suffering</u>

Barnes argues that Plaintiffs are barred from seeking

damages for Michael's pain and suffering under N.J. Stat. Ann. §

59:9-2(d), which provides:

> No damages shall be awarded against a public
> entity or public employee for pain and
> suffering resulting from any injury; provided,
> however, that this limitation on the recovery
> of damages for pain and suffering shall not
> apply in cases of permanent loss of a bodily
> function, permanent disfigurement or
> dismemberment where the medical treatment
> expenses are in excess of $ 3,600.00. For
> purposes of this section medical treatment
> expenses are defined as the reasonable value
> of services rendered for necessary surgical,
> medical and dental treatment of the claimant
> for such injury, sickness or disease,
> including prosthetic devices and ambulance,
> hospital or professional nursing service.

Contrary to Barnes's argument, in instances when it applies, this

"verbal threshold does not bar suit entirely. . .; the threshold

merely limits the recoverable damages." <u>Taglieri v. Moss</u>, 367

N.J. Super. 184, 197 (App. Div. 2004).

Further, Barnes concedes that there are instances in which

psychological injury can constitute "permanent loss of a bodily

function" within the meaning of the statute.  The New Jersey

Supreme Court so held in a case where the plaintiff suffered PTSD

as the result of a brutal rape:

> We hold that plaintiff's claim of alleged
> permanent psychological harm in the form of
> post-traumatic stress disorder resulting from
> the rape by the corrections officer,

> constitutes a "permanent loss of a bodily
> function" within the meaning of N.J.S.A.
> 59:9-2(d). As a result of the rape, plaintiff
> allegedly lost the ability to function in a
> normal mental state.

Collins v. Union County Jail, 150 N.J. 407, 420-21 (1997).  In

Collins, the Court found the brutality of the assault

particularly pertinent to its determination that PTSD can amount

to permanent loss of a bodily function.  There are similar

allegations here: Michael Ward alleges a brutal assault, severe

PTSD, and lasting impairment of emotional and psychological well-

being.

     However, the statute contains another threshold requirement:

expenditure of more than $3,600 for treatment.  Plaintiffs have

come forward with no evidence of any expenditures for treatment

of Plaintiff's psychological or mental impairments resulting from

the assault and conceded at oral argument that his treatment does

not meet this threshold.

     But the so-called "verbal threshold" section of the Tort

Claims Act must be read in concert with N.J. Stat. Ann. § 59:3-

14(b), which provides that the Act does not preclude a plaintiff

from seeking "the full measure of recovery" against a public

employee that would be available against someone in the private

sector if the public employee defendant acted "outside the scope

of his employment or [his conduct] constituted a crime, actual

fraud, actual malice or willful misconduct."[7]  See Kelly v. County of Monmouth, 380 N.J. Super. 552, 562 (App. Div. 2005) ("in circumstances in which the public employee acts willfully or beyond the scope of his employment, the verbal threshold must not be applied.  This conclusion is compelled by the very terms of the Tort Claims Act.")

The Tort Claims Act treats public employees differently than it treats public entities.  "Generally, immunity for public entities is the rule and liability is the exception.  In contrast, immunity of a public employee under the TCA is the exception."  Fleuhr v. City of Cape May, 159 N.J. 532, 539 (1999) (citations omitted).[8]  Insofar as a provision of the Act explicitly places the employee's alleged intentional conduct in this case outside the scope of public employment, the provisions available to protect him in his role as a public employee do not apply.

If Plaintiffs prove to a jury that Barnes acted outside the scope of his employment or with actual malice or willful

---

[7]  That same exception to immunity does not, of course, apply to public entities.  See Collins v. Union County Jail, 150 N.J. 407 (1997) (when Plaintiff raped by Union County employee, claim against Union County could not proceed without meeting verbal threshold).

[8]  "The TCA, N.J.S.A. 59:1-1 to 13-10, was enacted for the purpose of reestablishing the general rule immunizing public *entities* from liability for injuries to others."  Fleuhr v. City of Cape May, 159 N.J. 532, 539 (1999) (emphasis added).

misconduct, as they allege, then they will be entitled to seek pain and suffering damages without regard to the restrictions in N.J. Stat. Ann. § 59:9-2(d).  See Taglieri v. Moss, 367 N.J. Super. at 197 (holding that N.J. Stat. Ann. § 59:9-2(d) does not protect defendant employees acting with willful misconduct).

> As the 1972 Task Force Comment to N.J.S.A. 59:3-14 states: "It is the intent of this provision that a public employee guilty of outrageous conduct cannot avail himself of the limitations as to liability *and damages* contained in this act."

Kelly, 380 N.J. Super. at 563 (emphasis added).  Therefore, at this stage, where the evidence construed in the light most favorable to Plaintiffs shows that Barnes acted with actual malice or willful misconduct, the Court must deny Barnes's motion for summary judgment as to Plaintiffs' pursuit of pain and suffering damages on their battery and intentional infliction of emotional distress claims.  To recover such pain and suffering damages, however, mere negligence of Barnes will not suffice; instead, Plaintiffs will have to prove Barnes acted with actual malice or willful misconduct.

        8.    Punitive Damages

     Barnes argues that N.J. Stat. Ann. § 2A:15-5.3(c) precludes the award of punitive damages when compensatory damages are not recovered.  It is not clear what statute Barnes meant to cite

36

because the statute cited discusses apportionment of liability for joint tortfeasors.

The only statute that appears to describe the relationship between compensatory and punitive damages is N.J. Stat. Ann. § 2A:15-5.14(b), which provides: "No defendant shall be liable for punitive damages in any action in an amount in excess of five times the liability of that defendant for compensatory damages or $ 350,000, whichever is greater." Thus, even in the absence of recovering compensatory damages, a plaintiff is able to recover up to $350,000 in punitive damages, under New Jersey law.

Plaintiffs point out that N.J. Stat. Ann. § 2A:15-5.12 governs the availability of punitive damages:

> a. Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.
>
> b. In determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence, including but not limited to, the following:
>> (1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct;
>> (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct;

37

(3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and

(4) The duration of the conduct or any concealment of it by the defendant.

c. If the trier of fact determines that punitive damages should be awarded, the trier of fact shall then determine the amount of those damages. In making that determination, the trier of fact shall consider all relevant evidence, including, but not limited to, the following:

(1) All relevant evidence relating to the factors set forth in subsection b. of this section;

(2) The profitability of the misconduct to the defendant;

(3) When the misconduct was terminated; and

(4) The financial condition of the defendant.

Because there are claims against Barnes for liability that surpass mere negligence, and because there is evidence from which a jury could find he acted with actual malice or wanton and willful disregard of the known danger to Michael Ward, nothing in this statute precludes the punitive damages claims here. The statutory factors listed are for the trier of fact to consider and are not relevant to this Court's determination of the motion for summary judgment.

Therefore, there is no basis for granting summary judgment to Barnes on the punitive damages claim against him and his motion will be denied in this respect.

38

**D.    Motion by the Sterling Defendants**

The Sterling Defendants move for summary judgment on Counts
One through Five, Twelve, Fourteen, Sixteen, Eighteen, Nineteen
and Twenty of the Amended Complaint, and on all Counts as to
Defendants McCulley and Tannenbaum (on grounds of qualified
immunity)[9].  Plaintiffs have conceded that Defendants are
entitled to summary judgment on Counts Two, Eighteen and
Nineteen.  Because the Court has granted summary judgment to
Barnes for the negligence per se claim and because that claim is
not valid under New Jersey law, the Court must also grant summary
judgment to the Sterling Defendants on Count Four.  See N.J.
Stat. Ann. § 59:2-2(b) ("A public entity is not liable for an
injury resulting from an act or omission of a public employee
where the public employee is not liable.").   As to the other

---

[9]  Although the Sterling Defendants request summary judgment
on all counts as to McCulley and Tannenbaum on the basis of
qualified immunity, that immunity is only articulated, and
available, for constitutional claims asserted against them via 42
U.S.C. § 1983.  Because the Court has found that Plaintiffs have
failed to state a claim for a constitutional violation, see Part
III. D. 3, infra, these Defendants are entitled to qualified
immunity for that claim and the Court shall grant summary
judgment to Defendant Tannenbaum for Count Fifteen and to
Defendant McCulley for Count Seventeen.  But Counts Sixteen and
Eighteen, the negligence claims against these defendants, are not
subject to qualified immunity.  Because there is no other basis
for summary judgment argued as to these claims, and because it
appears that a reasonable jury could find that the Principal and
Superintendent of Sterling High School knew, or should have
known, that Michael Ward was being beaten at school or that
Barnes could not effectively control his students, the Court
shall deny summary judgment to Defendants on Counts Sixteen and
Eighteen.

claims, for the reasons explained below, the Court shall grant
the Sterling Defendants' motion in part and deny it in part.

        1.   <u>Whether the Sterling Defendants can be Liable in
Tort for Barnes's Actions</u>

The Sterling Defendants argue that they cannot be liable on
Counts I-V of the Amended Complaint, which assert claims of
battery, intentional infliction of emotional distress,
negligence, negligence per se, and a claim under the New Jersey
Constitution, against Barnes "as an agent and employee of
Sterling High School."  These counts appear to assert claims
against the Sterling Defendants under a respondeat superior
theory, rather than under a theory that these Defendants
themselves performed some tortious acts.

First, the Court notes that Barnes was not the employee of
Gallagher, McCulley or Tannenbaum.  Thus, respondeat superior
does not provide any basis for holding them liable for his
conduct, whether or not it was in the scope of his employment
with Sterling High School.  The Court shall therefore grant
summary judgment to Gallagher, McCulley and Tannenbaum insofar as
their liability was asserted in Counts I through V.

That leaves the public entities as defendants on these
claims.  As noted above, public entities are treated differently
than public employees under the New Jersey Tort Claims Act, and

40

therefore, this Court must discuss the liability of the entity defendants with that in mind.

The New Jersey Tort Claims Act provides for entity liability with respect to acts or omissions of a public employee who was acting within the scope of his employment:

> A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

N.J. Stat. Ann. § 59:2-2(a).

The Sterling Defendants note correctly that the New Jersey Tort Claims Act, specifically N.J. Stat. Ann. § 59:2-10, precludes public entity liability for the acts of a public employee when those acts constitute a crime, actual fraud, or actual malicious or willful misconduct. (Sterling Br. at 6.) Plaintiffs do not seem to oppose this aspect of the motion, as they merely argue that the Tort Claims Act does not preclude entity liability for an employee's negligent conduct.

The Court finds there is no legal basis for permitting respondeat superior liability to public entities on the theories of battery and intentional infliction of emotional distress, which are acts that require "actual malicious or willful misconduct." Section 59:2-10 of the Tort Claims Act precludes entity liability for such conduct and, therefore, the Court shall grant the motion for summary judgment to the Sterling High School

41

District Board of Education and Sterling High School District on
Counts One (battery) and Three (intentional infliction of
emotional distress) of the Amended Complaint.  Plaintiffs could
not prove Barnes committed these acts without also proving that
these public entities were immune from liability for this
conduct.

    Nevertheless, Plaintiffs are permitted to plead in the
alternative and there are disputes of fact as to Barnes's
liability for the negligence claims against him and whether they
were performed in the scope of employment.  Therefore, the Court
must deny the motion for summary judgment by Sterling High School
District and Sterling High School District Board of Education on
the respondeat superior claim for Barnes's negligence in Count
Five.  The public entity defendants have not satisfied their
burden of showing they are entitled to judgment as a matter of
law on a respondeat superior theory at this stage.  That said,
unless Plaintiffs prove at trial that Barnes was acting
negligently and in the scope of his employment, Sterling High
School District Board of Education and Sterling High School
District will be entitled to judgment as a matter of law.

        2.   Direct Negligence Claims Against Sterling
               Defendants

    In Counts Twelve, Fourteen, Sixteen, and Eighteen,
Plaintiffs allege negligence claims against the Sterling High

42

School District Board of Education, the Sterling High School District, David Tannenbaum and Jack McCulley, respectively.  The Sterling Defendants argue that these claims are precluded by the injury threshold provision of the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:9-2(d), which prohibits recovery for pain and suffering damages unless a claimant shows permanent injury where the medical treatment expenses exceed $3,600.  The exception that applies to public employees who act maliciously under N.J. Stat. Ann. § 59:3-14 does not apply to public entities.  Thus, there is no basis for seeking pain and suffering damages against the Sterling High School District Board of Education or the Sterling High School District in this case, where it is conceded that the injuries have not generated medical expenses in excess of the threshold.

Further, Plaintiffs cannot pursue pain and suffering damages against the individual public employees - Tannenbaum and McCulley - unless one of the exceptions of N.J. Stat. Ann. § 59:3-14 applies to their conduct, and they do not, as a matter of law, on the negligence theories asserted against them in these counts. In addition, Plaintiffs have not alleged, argued or provided evidence that Tannenbaum and McCulley acted outside the scope of their employment, willfully, or maliciously, as Plaintiffs have for Barnes.  Therefore, Plaintiffs cannot recover pain and

43

suffering damages against these individual public employees on a theory of negligence.

Because Plaintiffs concede that the medical treatment expenses for the PTSD that Michael allegedly suffers does not amount to $3,600, the Court must grant the motion for summary judgment insofar as it seeks to preclude pain and suffering damages against the Sterling Defendants for their own alleged negligence.

However, that does not prevent Plaintiffs from pursuing direct negligence claims against the Sterling Defendants.  New Jersey law permits claims for negligent hiring and retention. "An employer whose employees are brought into contact with members of the public in the course of their employment is responsible for exercising a duty of reasonable care in the selection or retention of its employees." Di Cosala v. Kay, 91 N.J. 159, 170-71 (1982).  Plaintiffs have provided sufficient evidence from which a jury could conclude that Defendants the Sterling High School District Board of Education and Sterling High School District failed to exercise due care in their hiring, supervision, and retention of Barnes, but Plaintiffs cannot recover non-economic damages against them.

On the other hand, the motion for summary judgment on these counts shall be granted as to Tannenbaum and McCulley because Plaintiffs have come forward with no evidence of any negligence

44

on their part and because neither was an employer of Barnes.
Therefore, they cannot be liable for negligent hiring,
supervision or retention of Barnes under New Jersey law.
Furthermore, there is no evidence that these individual
defendants were aware of any specific harm that Barnes posed to
Michael Ward.  Although Mrs. Ward testified that she spoke with
Nancy Tartaglione about bruises on Michael's body beforehand,
there was no evidence in the record that Mr. Tannenbaum or Mr.
McCulley were aware of this harm to Michael or any prior
misconduct of Barnes towards Michael Ward.

     3.   <u>Section 1983 Claims Against Sterling Defendants</u>

    Plaintiffs assert, via 42 U.S.C. § 1983, that the Sterling
Defendants violated Michael's liberty interest in bodily
integrity by failing to protect him from Barnes and the other
students. (<u>See</u> Am. Compl. Counts Eleven, Thirteen, Fifteen and
Seventeen.)  For the reasons explained below, the Court shall
grant this aspect of their motion for summary judgment and bar
these claims against them.

              Section 1983 does not, by its own terms,
             create substantive rights; it provides only
             remedies for deprivations of rights
             established elsewhere in the Constitution or
             federal laws. <u>Baker v. McCollan</u>, 443 U.S.
             137, 144 n. 3 (1979); <u>Mark v. Borough of</u>
             <u>Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir.), <u>cert.</u>
             <u>denied</u>, 516 U.S. 858 (1995) (citation
             omitted). In order to establish a section 1983
             claim, a plaintiff "must demonstrate a
             violation of a right secured by the
             Constitution and the laws of the United States

> [and] that the alleged deprivation was
> committed by a person acting under color of
> state law." <u>Mark</u>, 51 F.3d at 1141 (quoting
> <u>Moore v. Tartler</u>, 986 F.2d 682, 685 (3d Cir.
> 1993)).

<u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996).  Here,
Plaintiffs claim a violation of Michael's liberty interests "in
bodily integrity and freedom from physical attacks while in
school." (Am. Compl. ¶ 234.)  Plaintiffs thereby "invoke[] the
substantive component of due process, which 'protects individual
liberty against certain government actions regardless of the
fairness of the procedures used to implement them.'" <u>Nicini v.
Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000) (quoting <u>Collins v. City
of Harker Heights, Tex.</u>, 503 U.S. 115, 125 (1992)).

    "As a general proposition, a state's failure to protect an
individual against private violence does not constitute a
violation of due process." <u>Nicini v. Morra</u>, 212 F.3d 798, 806
(3d Cir. 2000). <u>See also</u> <u>DeShaney v. Winnebago Co. Dep't of
Social Serv.</u>, 489 U.S. 189, 197 (1989).  Nevertheless, persons
acting color of state law have a duty to protect against violence
by a third party if (1) a "special relationship" exists between
the individual harmed and the state or (2) there is a "state-
created danger." <u>Nicini</u>, 212 F.3d at 807-08.

    As a matter of law, the necessary "special relationship"
does not exist between public schools and pupils in New Jersey,

according to prevailing Supreme Court and Third Circuit
precedent.

> [I]t is the State's affirmative act of
> restraining the individual's freedom to act on
> his own behalf – through incarceration,
> institutionalization, or other similar
> restraint of personal liberty – which is the
> "deprivation of liberty" triggering the
> protections of the Due Process Clause, not its
> failure to act to protect his liberty
> interests against harms inflicted by other
> means.

DeShaney, 489 U.S. at 200.

The Third Circuit has held compulsory school laws are not
sufficiently similar to incarceration for due process purposes
and that, therefore, "no special relationship based upon a
restraint of liberty exists" in the public school setting,
despite such mandatory attendance laws. D.R. by L.R. v. Middle
Bucks Area Vocational Technical School, 972 F.2d 1364, 1373 (3d
Cir. 1992).[10] Nicini, cited above, addresses a separate issue
(foster care placement), but cited to D.R. and used the same
framework for determining when a special relationship exists.
This appears to remain good law and Plaintiffs conceded at oral
argument that the "special relationship" theory of liability does
not apply here.

---

[10] Although that case involved Pennsylvania's schools,
there is no argument that additional restrictions apply in New
Jersey that would change the outcome of this constitutional
analysis.

Rather, Plaintiffs argued that Defendants are liable under the state-created danger theory and that Walter Barnes, himself, was the danger.

> DeShaney . . . left open the possibility that the state may be liable for constitutionally protected rights, even in the absence of a special relationship with an individual, when the state, through its affirmative conduct, creates or enhances a danger for the individual. 489 U.S. at 201. This "state-created danger" exception applies when the state, through some affirmative conduct, places the individual in a position of danger. See Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir.1998).

Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Medical Svcs. Training Inst., 318 F.3d 473, 478 (3d Cir. 2003) The Third Circuit uses a four-part test, which holds a state actor liable if:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.

Kneipp, 95 F.3d at 1208 (quoting Mark, 51 F.3d at 1152). Courts analyzing whether conduct is actionable under the state-created danger theory use a deliberate indifference standard. Id. at 1208.

Plaintiffs argue that the School District's failure to fire Barnes after another incident involving physical confrontation

48

with a student shows a willful disregard for the safety of the students (the second factor).  (Pl.'s Br. Opp. Sterling Def. at 20.)  There is also a bald assertion that the danger was foreseeable.  But there are no cites to the record and Plaintiff does not discuss whether or how the Sterling Defendants used their authority to create an opportunity that otherwise would not have existed.  (The Sterling Defendants concede the third element, that there is some relationship between them and Plaintiff Michael Ward.)

Barnes's past conduct discussed in the record involved incidents in which Barnes allegedly improperly used physical force to restrain or discipline a student.  For example, he allegedly led a student out of his classroom by the arm after grabbing the student's chains that were hanging around his neck. In another incident, he grabbed hold of a student who was becoming violent and tackled him to the ground.  In another incident, a student was attempting to escape detention by jumping out of the window of a classroom.  Barnes allegedly grabbed the student by the ankles and ended up holding his shoes while the student escaped.  None of these incidents presents evidence that the harm ultimately caused here would result from the decision to retain Barnes, even viewing the facts in the light most favorable to Plaintiffs.

49

The claims against Barnes in this case are that (1) he purposely and maliciously instigated physical harm against a student or (2) he neglected the harm that was occurring to Michael in his classroom.  None of the prior incidents involved Barnes producing harm to the student willfully or failing to notice bad conduct that was occurring - the type of harm alleged here.

Nevertheless, Plaintiffs make a convoluted argument that the school was deliberately indifferent because it counseled Barnes not to touch students, which, they say, made it likely that when Barnes wanted to discipline students, he would use other students to attack them.  Such harm, if it occurred, was not a foreseeable result of retaining Barnes or forbidding him from touching students.

Further, as Defendants point out in their reply, there is uncontradicted evidence that Barnes was given counseling, was psychiatrically evaluated, and was given a reduced schedule after one of the incidents in 1999, to ensure that he behaved safely in the classroom.  Such remedial measures are not evidence of the School Board's deliberate indifference; nor have Plaintiffs produced any other evidence that would indicate the school acted in willful disregard of the safety of the students in general or Michael in particular.

Accordingly, the Court shall grant the motion for summary judgment as to the Sterling Defendants with regard to any claims asserted against them via 42 U.S.C. § 1983.

    4.  <u>IDEA Claims</u>

The Sterling Defendants also move to dismiss Plaintiffs' claims (principally asserted in Counts Nineteen and Twenty) under the IDEA.[11]   The Sterling Defendants note that Plaintiffs failed to properly exhaust administrative remedies, Gallagher is not a proper defendant under the IDEA because there is no individual liability under the statute, and that 42 U.S.C. § 1983 is not a permissible vehicle for pursuing these claims.  At oral argument, Plaintiffs conceded that their IDEA claims should be dismissed against all Defendants.  Accordingly, judgment in favor of the Sterling Defendants will be entered as to Counts Nineteen and Twenty.

**E.   Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment against Barnes with regard to Counts One (battery as a representative for the Sterling entities), Four (negligence per se against Barnes as a representative for the Sterling entities), Five (negligence

---

    [11]   The Sterling Defendants note that the § 1983 claims also allege that the Sterling Defendants failed to adhere to Michael's IEP or otherwise provide him a free and appropriate education. (Sterling Def. Br. at 33) (citing Am. Compl. ¶¶ 195(v), 212(w), 230(x) and 250(v)).  As they point out, 42 U.S.C. § 1983 is not a proper vehicle for pursuing claims based on violations of the IDEA.

against Barnes as a representative for the Sterling entities),
Six (battery individually), Nine (negligence per se against
Barnes individually), Ten (negligence against Barnes
individually), Twelve (negligence against the Sterling High
School District Board of Education), Fourteen (negligence against
the Sterling High School District), Sixteen (negligence against
Tannenbaum, individually and as the principal of Sterling High
School), and Eighteen (negligence against McCulley, individually
and as superintendent).  Of course, on Plaintiffs' motion, the
Court must now view the facts in the light most favorable to
Defendants.

   1. <u>No Basis for Claims</u>

  As noted above, the Court is granting summary judgment for
all Defendants on Counts Four and Nine, the negligence per se
claims and, therefore, it must deny Plaintiffs' motion for
summary judgment on those claims. New Jersey law does not support
them.

   2. <u>Battery</u>

  Plaintiff also moves for summary judgment as to the battery
claims against Barnes, both as an agent for the Sterling
Defendants and individually.  As noted above, any liability
Barnes may have for this conduct is based on a theory of
intentional willful misconduct for which the public entity cannot
be liable under the New Jersey Tort Claims Act.  The facts

regarding Barnes' intent and willfulness are in dispute. Therefore, the Court must deny Plaintiffs' motion for summary judgment as to Count One.

Further, there is a material dispute of fact as to the claim against Barnes individually, as he claims he did not direct the attack against Michael. Therefore, the Court must deny Plaintiffs' motion for summary judgment on the battery claim in Count Six as well. These matters are clearly for a jury to decide.

### 3. Negligence

Plaintiffs argue that they are entitled to judgment as a matter of law on their claims in Counts Five (negligence against Barnes as a representative for the Sterling entities), Ten (negligence against Barnes individually), Twelve (negligence against the Sterling High School District Board of Education), Fourteen (negligence against the Sterling High School District), Sixteen (negligence against Tannenbaum, individually and as the principal of Sterling High School), and Eighteen (negligence against McCulley, individually and as superintendent). Plaintiffs argue that the Court should grant res judicata effect to the DYFS letter alleging neglect by Barnes because those investigatory findings were affirmed at a hearing by an Administrative Law Judge.

Because Plaintiff has failed to provide the Court with any proof of that claim, the Court cannot give any effect to the agency's decision.  The letter itself is not the kind of administrative determination to which New Jersey courts grant collateral estoppel effect.  Thus, there could not be any issue preclusion that would bar relitigation of any fact in dispute in both situations.

Further, viewing the facts in the light most favorable to Defendants, and there being no other argument in support of summary judgment, the Court finds that material disputes of fact preclude summary judgment on Plaintiffs' negligence claims.  The Court shall therefore deny Plaintiffs' motion on Counts Five, Ten, Twelve, Fourteen, Sixteen and Eighteen.

## IV.  CONCLUSION

For the reasons explained above, the Court shall grant the motion for summary judgment by the Gismonde parents; grant Barnes's motion for summary judgment on Counts Seven and Nine, but deny Barnes's motion on Counts Six, Eight, Ten, Twenty-Four, and insofar as he seeks to preclude pain and suffering and punitive damages against him; grant the motion for summary judgment for all Sterling Defendants as to Counts Two, Eleven, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty; grant summary judgment to Defendants Gallagher, Tannenbaum and McCulley on all claims against them; and deny summary judgment for Sterling High

54

School Board of Education and Sterling High School District as to
Counts Twelve and Fourteen; grant summary judgment to the
Sterling High School District and the Sterling High School
District Board of Education on Counts One and Three and insofar
as Plaintiffs seek pain and suffering damages against them, but
deny summary judgment on Count Five, a theory of respondeat
superior for Barnes's negligence.  The Court shall also deny
Plaintiffs' motion for summary judgment in its entirety.  An
appropriate Order shall be entered.


**February 29, 2008**                    **s/ Jerome B. Simandle**
Date                                     Jerome B. Simandle
                                         U.S. District Judge

55