IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL J. WARD, et al., | |
| Plaintiffs, | Civil Action No. 05-1850 (JBS) |
| v. | OPINION |
| WALTER F. BARNES, et al., | |
| Defendants. | |

APPEARANCES:

Diana Lynn Moro, Esq.
Mark J. Hill, Esq.
MARK J. HILL & ASSOCIATES
400 North Church Street
Suite 250
Moorestown, NJ 08057
    Attorneys for Plaintiffs
    Michael, Barbara and John
    Ward

Arnold Malcolm Mellk, Esq.
WILLS, O'NEILL & MELLK
10 Nassau Street
Princeton, NJ 08542
(609) 924-0700

    - and -

F. Michael Daily, Jr., Esq.
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
    Attorneys for Defendant
    Walter Barnes

Patrick J. Madden, Esq.
MADDEN & MADDEN, PA
108 Kings Highway East
Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389
    Attorney for Defendants
    James Gallagher, David
    Tannenbaum, Sterling High
    School District, Sterling
    High School District Board
    of Education, and Jack
    McCulley

Lee Harris Eckell, Esq.
POST SCHELL, PC
Overlook Center
2nd Floor
100 Overlook Drive
Princeton, NJ 08540
    Attorney for Defendants
    Steven E. Gismonde, Sr.
    and Jane Gismonde

**Simandle, District Judge:**

**I.   INTRODUCTION**

This matter is before the Court on Plaintiffs' motion for leave to file a belated motion for reconsideration of the Court's February 29, 2008 Order and Opinion [Docket Item 123] and on a motion by Defendant Barnes to exclude Plaintiff's expert [Docket Item 83], in which Defendants Sterling High School District, Sterling High School Board of Education, David Tannenbaum, Jack McCulley, James Gallagher [Docket Item 85] (the "Sterling Defendants"), Steven Gismonde and Jane Gismonde [Docket Item 86] have joined.

For the reasons explained below the Court shall grant in part and deny in part Defendants' motion to exclude Plaintiffs' expert's testimony and report from being admitted into evidence at trial and shall deny Plaintiff's motion for leave to file a motion for reconsideration.

**II.   BACKGROUND**

As the parties are familiar with the factual background of this case, the Court shall briefly summarize only the procedural background relevant to these motions.

Plaintiff Michael Ward, a student with cerebral palsy, was allegedly assaulted by fellow students in his high school gym class on May 9, 2002 at the direction of his teacher.  The other Plaintiffs in the case are his parents, John and Barbara Ward.

The original Complaint in this matter was filed more than three years ago, on April 8, 2005.  The Amended Complaint was filed nearly a year later, on March 30, 2006.

There were numerous scheduling orders entered by Magistrate Judge Donio in this case.  The April 17, 2007 Amended Scheduling Order, the last one relevant to the motion in limine to exclude an expert, stated the discovery deadlines as follows: pretrial factual discovery was due by June 15, 2007; Plaintiff's expert reports were due by May 30, 2007; Defendants' expert reports were due by June 29, 2007; expert depositions were to be concluded by July 30, 2007; dispositive motions were due by July 23, 2007; and the final pretrial conference was set for September 21, 2007.  Magistrate Judge Donio's order provided:

> No expert opinion testimony shall be admitted at trial with respect to any witness for whom this procedure has not been timely followed.
>
> [. . .]
>
> Any application for an extension of time beyond the deadlines set herein shall be made in writing to the undersigned and served upon all counsel prior to expiration of the period sought to be extended, and shall disclose in the application all such extensions previously obtained, the precise reasons necessitating the application showing good cause under Rule 16(b), and whether adversary counsel agree with the application. The schedule set herein will not be extended unless good cause is shown.
>
> [. . .]
>
> **THE FAILURE OF A PARTY OR ATTORNEY TO OBEY**

3

**THIS ORDER MAY RESULT IN IMPOSITION OF SANCTIONS UNDER FED. R. CIV. P. 16(f).**

An Amended Scheduling Order was entered on July 24, 2007, but it did not address the subject of expert reports or factual discovery.  Thus, the expert discovery deadlines were never subsequently altered by the Court nor was there a subsequent request to do so.  However, the date for filing summary judgment motions was extended to August 23, 2007.  All parties timely filed motions for summary judgment, although Plaintiffs' counsel provided the certificate of service one day late.

Plaintiffs' counsel had informed counsel for Defendants on May 29, 2007 that Mr. Rappucci's report[1], which all parties had been expecting, was delayed and that it would be made available to Defendants as soon as possible but no later than June 15, 2007.  (Ex. A to Barnes Mot. in Limine.)  However, the report was not provided to Defendants until August 9, 2007, seventy-one days after Plaintiff's expert reports were due.  (Ex. C to Pl.'s Opp to Mots. in Limine.)  As noted above, Plaintiffs did not apply to the Court for an extension of that deadline before it expired.  On August 14, 2007 Defendants notified Plaintiff's counsel that

---

[1] Mr. Daniel Rappucci is a vocational rehabilitation specialist whose opinion Plaintiffs seek to admit to support Michael Ward's claim that the injuries he suffered caused him a loss of earning potential.  Mr. Rappucci holds a masters degree and several certifications and is referred to as a "disability analyst."  (See Rappucci Rpt. in Ex. B to Barnes Mot. in Limine.)

they objected to the late expert report.  (Id.)  Plaintiff's counsel responded that she would make Mr. Rappucci available for a deposition anytime prior to trial, despite the close of discovery and that Plaintiff's counsel would not object to any extension of time Defendants needed to ask their expert to reply to the Rappucci report.  (Ex. A to Pl.'s Opp to Mots. in Limine.) On August 31, 2007, Defendants filed the present motion in limine to exclude Mr. Rappucci's report.

On January 4, 2008, this Court heard oral argument on this motion in limine and the motions for summary judgment and reserved decision.  This Court issued a 55-page Opinion and an Order on February 29, 2008 on the motions for summary judgment. (Mr. Rappucci's report was not submitted in connection with any motion for summary judgment, and thus, the issue of its admissibility was not relevant to the Court's rulings on summary judgment.)   In the summary judgment opinion, this Court denied Plaintiffs' motion for summary judgment in its entirety but granted in part and denied in part the Defendants' motions. Specifically, the Court granted the motion for summary judgment by the Gismonde Defendants; granted Defendant Barnes's motion for summary judgment on Counts Seven and Nine, but denied Barnes's motion on Counts Six, Eight, Ten, Twenty-Four, and insofar as he sought to preclude pain and suffering and punitive damages against him; granted the motion for summary judgment for all

Sterling Defendants as to Counts Two, Eleven, Thirteen, Fifteen, Seventeen, Nineteen, and Twenty; granted summary judgment to Defendants Gallagher, Tannenbaum and McCulley on all claims against them; denied summary judgment for Sterling High School Board of Education and Sterling High School District as to Counts Twelve and Fourteen; and granted summary judgment to the Sterling High School District and the Sterling High School District Board of Education on Counts One and Three and insofar as Plaintiffs sought pain and suffering damages against them, but denied summary judgment on Count Five, a theory of respondeat superior for Barnes's negligence.

Electronic notices of the opinion and order were sent to counsel of record in this case.  The Court's electronic receipt indicates that Plaintiff's counsel viewed the February 29, 2008 summary judgment Order, but not the Opinion, on March 3, 2008 at 8:40 a.m.

Pursuant to Local Civil Rule 7.1(i), the parties had ten business days from the February 29, 2008 Opinion and Order ("the February summary judgment opinion) to file a motion for reconsideration, that is, until March 14, 2008.  However, on March 20, 2008, fourteen business days from the entry of that opinion and order, Plaintiffs filed a motion for leave to file a motion for reconsideration, with the proposed motion for reconsideration and brief attached.  Defendants timely opposed.

## III. DISCUSSION

### A.   Motion in Limine

Defendants move to exclude the expert testimony and report of Plaintiffs' proposed expert Mr. Rappucci, a disability analyst, on two grounds: (1) that it is untimely and should be barred pursuant to Fed. R. Civ. P. 16(f) as a violation of discovery orders and (2) that it is an impermissible, unreliable net opinion inadmissible under Fed. R. Evid. 702.

### 1.   Whether Expert Opinion Should be Excluded for Lateness

District Courts have the power under Fed. R. Civ. P. 16(f) to bar evidence at trial when a party violates a scheduling order.  In making that determination, courts in this Circuit must balance four factors: "(1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified; (2) the ability of the party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the Court; and (4) bad faith or willfulness in failing to comply with the Court's order."  Exxon Corp. v. Halcon Shipping Co., Ltd., 156 F.R.D. 589, 591 (D.N.J. 1994) (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904 (3d Cir. 1977), overruled on other grounds by, Goodman v. Lukens Steel, 777 F.2d 113 (3d Cir. 1985), aff'd, 482 U.S. 656 (1987)).

Because Plaintiff's intention to obtain a report from this
expert was timely disclosed, there appears to be no surprise in
fact.  In addition, although the late report was provided while
the parties were preparing to file and argue the motions for
summary judgment, no party relied on the Rappucci report or its
absence and it did not affect this Court's decision on summary
judgment.  Further, Rappucci has apparently been made available
for deposition at any time.  Thus, although the late disclosure
of his report might cause a need for revision of Defendants'
experts' reports, and that weighs against admission, overall the
prejudice to Defendants is minimal.

As noted, because Rappucci is available for deposition and
because the Court has not relied on his report to date,
Defendants will be able to cure any prejudice that would normally
flow from such a late report.

Permitting this witness to testify at trial would not be
unduly disruptive of the Court's resources or the progress of
this case toward trial.  Although the final pretrial conference
was held on April 25, 2008, this case has already spanned more
than three years of litigation, and the need for an additional
deposition and supplemental Defense expert reports would cause
delay, the Rappucci report has been in Defendants' possession for
some time now and the Court anticipates that the necessary
limited supplemental discovery could be accomplished within

thirty days.  No trial date has been set yet and the parties are certainly aware that the motion for reconsideration of the Court's decision as to which claims can be tried – a motion that was filed after the final pretrial conference was scheduled – must be decided before the parties can truly prepare for trial.

There is no argument that Plaintiffs acted in bad faith in failing to provide the expert report prior to May 30, 2007; rather it appears that Plaintiff's counsel was cognizant of the deadline (having alerted defense counsel to the expected lateness) but disorganized in obtaining necessary cooperation from the proffered expert.  Plaintiffs' counsel would have been wise to request an extension from Magistrate Judge Donio when it became clear that the expert would be unable to meet the court-mandated deadline.  But the failure to do so, while technically sanctionable, does not rise to the level of bad faith.  The identity of the expert as well as the nature of his report had been timely disclosed and Plaintiff's counsel appears to have provided the report to Defense counsel as soon as it came into her possession.  Further, Plaintiffs did not attempt to obtain an unfair advantage by using the report in the summary judgment motion practice.  Therefore, the final factor weighs against exclusion.

Although the Rappucci report was inexcusably late, on balance the Court does not find that exclusion of this evidence

is an appropriate sanction for failure to comply with Magistrate Judge Donio's scheduling order.

      2.   <u>Whether Expert Opinion is Admissible under Rule 702</u>

        *a.  Overview of 702*

Nevertheless, the Court must also determine whether the expert evidence proffered by Plaintiffs is admissible under Federal Rule of Evidence 702, which governs the admission of expert testimony in federal court and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In other words, when the Court evaluates proffered expert testimony, it must consider three requirements:

> (1) qualifications - whether the expert is qualified to speak with authority on a particular subject or issue; (2) reliability – whether the expert's methodology is sound and whether his or her opinion is supported by "good grounds;" and (3) fit – whether there is a relevant "connection between the scientific research or test result to be presented and particular disputed factual issues in the case."

<u>Yarchak v. Trek Bicycle Corp.</u>, 208 F. Supp. 2d 470, 494 (D.N.J. 2002) (quoting <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717,

741-43 (3d Cir. 1994)).  The burden is on the proponent of the testimony to prove its admissibility by a preponderance of proof. Id. at 744 (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).  However,

> [t]his standard is not intended to be a high one, nor is it to be applied in a manner that requires the plaintiffs "to prove their case twice -- they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."

Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000) (quoting Paoli, 35 F.3d at 744).

    b.   *Rappucci's Report*[2]

In his report, Mr. Rappucci opined that a "feasible vocational objective" for Michael Ward, prior to the alleged injuries he suffered from Defendants, would have been to become a high school social studies teacher, after graduating high school and college.  (Rappucci Rpt. at 18.)  Michael is currently working, instead, as a full-time forklift operator.  Therefore, Mr. Rappucci calculated the earnings differential between forklift operators and high school teachers for forty-five years, accounting for the time between when Michael would have graduated college, 2008, and the time he would have retired at age sixty-

---

[2] There is no argument that Rappucci is not a qualified expert; therefore, the Court shall not recount Rappucci's CV or discuss the issue of qualification.

seven, 2053.  Based on this evaluation, Mr. Rappucci concluded that on average, Michael suffered an annual loss of $27,950, or $1,257,750 over a lifetime.  He did not attempt to calculate the present-day discounted value of that differential.

Mr. Rappucci opined that the career path of a high school social studies teacher would have been a feasible one for Michael based on his IQ scores, which are comparable to that of high school teachers, and his stated personal interest, in an interview with Rappucci, in social studies.  Mr. Rappucci noted that some evidence of Michael's academic and behavioral problems was gathered in a year when Michael was grieving the loss of his grandmother, with whom he had lived, and therefore might not have been fully reflective of his pre-injury abilities.  However, Mr. Rappucci did not otherwise account for Michael's problems in school.

    *c.*   *Parties' Arguments*

Defendants claim that Rappucci's opinion is not reliable under Rule 702.[3]  To be reliable, an expert's opinion must be

---

[3]  Defendants also argue that the expert evidence should be barred under the net opinion rule.  "[T]he net opinion rule is established under New Jersey law and 'is not a federal evidentiary rule and does not form a part of the Daubert/Kumho analysis.'"  Zeller v. J.C. Penney Co., Inc., Civ. No. 05-2546, 2008 WL 906350, at *7 n.13 (D.N.J. Mar. 31, 2008) (quoting D & D Assoc., Inc. v. Bd. of Educ. of N. Plainfield, Civ. No. 03-1026, 2006 WL 755984, at *6 n. 1 (D.N.J. Mar. 20, 2006)).  Rather, "the net opinion rule is merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702 of the Federal Rules of Evidence."  Id.  The net

"based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'"  Paoli, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 590).  Defendants claim that Rappucci relied on facts presented to him by Plaintiff Michael Ward and that Rappucci employed no reliable methodology in formulating his conclusions.  Plaintiffs counter that Rappucci's method of analysis was reliable because Rappucci reviewed not only information gathered in his meeting with Michael Ward, but also sworn deposition testimony of Michael, Barbara and John Ward; a neuropsychological evaluation by Dr. Sacchetti; and the report of a forensic psychologist, Dr. Martinson.  Plaintiffs argue that the trier of fact can determine whether Defendants proximately caused Michael not to graduate from high school and that Rappucci's testimony is useful to the trier of fact in calculating damages if the jury so finds.

> d.   Reliability and Fit

The Court must determine, pursuant to this motion in limine, the reliability and fit of the proffered expert evidence on lost earnings capacity.  The Court of Appeals requires "more than speculative opinion when determining damages for prospective

---

opinion rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data."  State v. Townsend, 186 N.J. 473, 494 (2006).  Thus, a proper Rule 702 analysis, including determinations of reliability and fit, suffices to address Defendants' concerns about whether Rappucci's report expresses a "net opinion."

earnings loss." <u>Benjamin v. Peter's Farm Condo. Owners Ass'n</u>, 820 F.2d 640, 642 (3d Cir. 1987).  If an expert's opinion is based upon conjecture or speculation, it may be stricken. <u>Fedorczyk v. Caribbean Cruise Lines, Ltd.</u>, 82 F.3d 69, 75 (3d Cir. 1996).  An expert cannot formulate his opinion of lost earnings by relying solely on a plaintiff's personal belief of lost opportunities because such personal belief is "merely speculative" and the expert opinion would, therefore, be "without proper foundation and insufficient for a jury properly to assess [a plaintiff's] damages." <u>Benjamin</u>, 820 F.2d at 643.  To be reliable, an expert's opinion must be "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" <u>Paoli</u>, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 590).

Courts in this Circuit have formulated a specific iteration of the reliability and fit requirements for expert testimony on likely lost future earnings:

> "[A]lthough mathematical exactness is not required, [expert] testimony of post-injury earning capacity must be based upon the proper factual foundation." <u>Benjamin[]</u>, 820 F.2d [at 643]. Put another way, an "expert's testimony [regarding future earnings loss] must be accompanied by a sufficient factual foundation before it can be submitted to the jury." <u>Gumbs v. International Harvester, Inc.</u>, 718 F.2d 88, 98 (3d Cir. 1983).

<u>Elcock v. Kmart Corp.</u>, 233 F.3d 734, 754 (3d Cir. 2000).

Defendants claim there is no proper factual foundation for Mr. Rappucci's conclusion that absent the injuries Michael Ward allegedly suffered here, he would have been employed as a high school social studies teacher.

Indeed, the evidence in the record, and which Rappucci reviewed, indicates that Michael Ward was suffering from multiple educational and emotional deficits long before the incidents alleged here.  As the report notes, Michael's "school records reflect a decline in academic performance by the 6th grade." (Rappucci Rpt. at 2.)

Michael's records from the Dupont Center for Children indicated that since kindergarten he had learning difficulties as well as attention and focus issues in school.  (Id.)  Michael also had consistent social problems that worsened as he aged. (Id.)

Beyond early childhood, Michael continued to have learning and behavior problems at school.  (Id. at 3.)  The academic year prior to the incidents in this case, "teachers described him as having academic abilities far greater than his performance, poor behavior, irregular attendance, and problems with attention," and noted that he failed to complete his work.  (Id.)  The psychiatrist who evaluated Michael in eighth grade diagnosed him

with Oppositional Defiant Disorder.[4]   (Id.)   Toward the end of
that school year, "his day was modified to a half-day as his
behavior appeared to deteriorate near the end of the day."   (Id.)

In June of 2001, almost a year before the incident, a school
psychiatrist, Marie Doria, M.D., thought Michael was "highly
narcissistic and lacking in empathy," "verbally aggressive," that
he used his size to dominate others, and was "at high risk to
drop out at age 16 because he is totally unmotivated to attend

---

[4]   The Diagnostic and Statistical Manual defines this
disorder, in part, as follows:

> The essential feature of Oppositional Defiant
> Disorder is a recurrent pattern of
> negativistic, defiant, disobedient, and
> hostile behavior toward authority figures that
> persists for at least 6 months . . . and is
> characterized by the frequent occurrence of at
> least four of the following behaviors: losing
> temper (Criterion A1), arguing with adults
> (Criterion A2), actively defying or refusing
> to comply with the requests or rules of adults
> (Criterion A3), deliberately doing things that
> will annoy other people (Criterion A4),
> blaming others for his or her own mistakes or
> misbehavior (Criterion A5), being touchy or
> easily annoyed by others (Criterion A6), being
> angry and resentful (Criterion A7), or being
> spiteful or vindictive (Criterion A8).  To
> qualify for Oppositional Defiant Disorder, the
> behaviors must occur more frequently than is
> typically observed in individuals of
> comparable age and developmental level and
> must lead to significant impairment in social,
> academic, or occupational functioning
> (Criterion B).

Diagnostic and Statistical Manual of Mental Disorders 313.81
(American Psychiatric Association 2002).

school." (Id. at 2.)  Accordingly, that psychiatrist also
diagnosed Michael with Oppositional Defiant Disorder.  (Id.)  In
addition, Dr. Doria thought that Michael might need a
"specialized school experience" to deal with his behavior
problems, but concluded that it might not be helpful.  "In any
event, he has no intention of complying and completing school."
(Doria Rpt., Ex. 1 to Sterling Mot. in Limine.)

When Michael moved on to high school, but prior to the
injuries alleged here, the reports Rappucci reviewed indicate
that Michael continued to have significant "behavioral and
academic problems."  (Id.)

Mr. Rappucci failed to account for the records of Michael's
academic and behavioral problems before the alleged injuries. In
determining that it was "feasible" that Michael Ward could have
been a social studies teacher, Mr. Rappucci did not address
Michael's consistently poor academic performance, his lack of
school attendance, his inability to get along with others, or his
repeated manifestations of Oppositional Defiant Disorder.  The
only account that Mr. Rappucci attempted to make of this negative
history was to note that in 2001, when an evaluator indicated
that Michael was at high risk for dropping out of high school,
Michael might have been grieving the loss of his grandmother who
died within the year and to whom he was very close.  That opinion
is mere speculation, but even if it were true, it fails to

account for the rest of the long record, which indicates that Michael Ward had significant academic and behavioral challenges prior to the alleged injuries here; that experts with whom Michael Ward interacted since kindergarten were concerned about his educational future; and that those factors, not caused by Defendants, likely affected not only his prospects for graduation but also his employability.  In particular, Mr. Rappucci failed to discuss how Michael Ward's poor attendance record, his Oppositional Defiance Disorder and his learning impairments, which persisted prior to the incidents at issue in this case, affected his prospects of graduating from high school, let alone college, and his earnings potential.  Therefore Rappucci's opinion presents an inaccurate picture of Plaintiff's likely lost earnings potential and should not be presented to the jury.[5]  Cf. Heckman v. Federal Press Co., 587 F.2d 612, 618 (3d Cir. 1978) (discussing Pennsylvania law) ("In projecting probable future

---

[5]  The Sterling Defendants also argue that Mr. Rappucci fails to account for the post-injury steps they took to educate Michael in various alternative placements.  There is a material dispute of fact as to whether Michael's subsequent failure to complete high school or obtain a GED was caused by Defendants and the injuries Michael allegedly suffered at their hands. Therefore, the Court does not find that the expert's report is unreliable merely because it did not credit Defendants' version of events, as the Sterling Defendants seem to argue.  But Michael Ward's previous educational and emotional history is not disputed and, therefore, the failure to examine how that history impacted his likely employability renders unsupportable Rappucci's opinion that Michael Ward would have been a teacher but for the alleged injuries.

earnings, consideration must be given to such matters as age, condition, station in life, occupation, health, surroundings, education, and ability to perform in other markets in which plaintiff's skills could be utilized.").

This Court heeds the Third Circuit's admonition against admitting expert testimony on earnings if the testimony does not account for the Plaintiff's actual pre-injury capabilities. See Benjamin, 820 F.2d at 642 (collecting cases that support factual foundation requirement). Under Rule 702, Mr. Rappucci's opinion does not fit the facts and is not reliable because it mentions but then ignores essentially all salient circumstances of Michael Ward's record before the 2002 incident herein, especially his declining academic achievement since sixth grade, significant personality disorder, absenteeism, learning difficulties since kindergarten, and inability to complete work, all of which created the poor prognosis by the school psychiatrist, Dr. Doria, in 2001. Mr. Rappucci has applied no reliable scientific method in reaching his opinion, which appears to be based on nothing more than the interests and hopes of Michael Ward and his parents. Such speculation does not qualify as reliable methodology under Rule 702. Accordingly, the Court shall grant the motion in limine and exclude the expert testimony of Mr. Rappucci insofar as he seeks to opine on whether Michael Ward was likely to graduate from high school and college and become a

social studies teacher.

Nevertheless, Michael Ward may, through other evidence, prove at trial that he would have graduated from high school but for the Defendants' actions.  If a jury makes such a determination, it should not proceed to consider economic damages unguided by any objective evidence of the likely earnings loss flowing from Michael Ward's failure to graduate high school. Although Mr. Rappucci's opinion about Michael Ward's likely future career path is not admissible at trial, for the reasons explained above, if Michael Ward presents evidence from which a reasonable jury can determine that he would have graduated from high school, there may remain a limited role for this expert to explain the earnings differential between those who do and those who do not graduate from high school.  Whether such a role remains for Mr. Rappucci may be addressed at the final pretrial conference.

### B.   Motion for Reconsideration

Next the Court turns to Defendants' motion for leave to file a motion for reconsideration of this Court's summary judgment opinion.  Pursuant to Local Civil Rule 7.1(i), either party had ten business days from the February 29, 2008 Opinion and Order ("the February summary judgment opinion) to file a motion for reconsideration, until March 14, 2008.  Pursuant to Local Civil Rule 6.1, any request of an extension of time to file a motion

for reconsideration should have been received prior to March 14. However, on March 20, 2008, fourteen business days from the entry of the February summary judgment opinion, Plaintiffs filed a motion for leave to file a motion for reconsideration, with the proposed motion for reconsideration and brief attached. Defendants timely opposed.  For the reasons explained below, the Court shall deny the untimely motion for an extension of time to file a motion for reconsideration.  Further, even if the Court granted the motion for extension of time, the Court would deny the motion for reconsideration on the merits, as explained below.

### 1.   Court Shall Not Extend Time to File Motion

Local Civil Rule 7.1(i) provides, in relevant part, "A motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion by the Judge."  Thus, the parties had ten business days from the February 29, 2008 Opinion and Order to file a motion for reconsideration – that is until March 14, 2008.

In the briefing submitted to the Court, Plaintiff's counsel indicates that it became aware of the existence of the February summary judgment opinion upon receiving electronic notice on March 14, 2008[6], that an amended scheduling order had been

_____

[6]  Although Plaintiff's notice of motion indicates that it received the notice on March 12, 2008, because the amended scheduling order was signed March 12 and not entered until March 13, the Court will assume that March 14 is the date upon which counsel is alleging it became aware of the February summary

entered in this case.  That March 14 notice allegedly caused
Plaintiff's counsel to review the docket in this case and to
discover that the summary judgment opinion had been filed ten
business days earlier.  Plaintiffs' counsel has not provided the
Court with any certification or evidence that might explain a
breakdown in communication between this Court and Plaintiff's
counsel.

According to the Court's records from CM/ECF, electronic
notices of the February summary judgment Opinion and Order were
sent to all attorneys of record in this case on February 29, 2008
and Plaintiff's counsel actually viewed the February summary
judgment order, but not the opinion, on March 3, 2008, well
before the expiration of the ten business days allotted for
seeking reconsideration and seventeen days before filing this
motion for an extension.  Thus, the Court can confirm both that
proper notification was sent to and received by Plaintiff's
counsel, pursuant to Local Civil Rule 5.2.  As the parties are
well aware, "[c]ounsel may expect to receive notice of all court
action by electronic mail.  The consequences of such notice are
the same as the consequences of receipt by regular mail:
oftentimes critical time periods will begin to run."  L. Civ. R.
5.2, comment 3.

With the nationwide installation of the Case

--------------------------------------------------

judgment opinion.

> Management/Electronic Case Filing ("CM/ECF")
> system in the federal courts -- which occurred
> in this district on January 1, 2004 -- tasks
> such as filing motions, orders, and opinions
> and sending notices between the court and
> counsel occur electronically. While this has
> generally been viewed as effective, efficient
> and less prone to error than the traditional
> paper-and-postage based system, important
> communications can be overlooked with
> sometimes dreadful consequences.

Lewis v. Blaine, Civ. No. 02-1162, 2005 U.S. Dist. LEXIS 36409

(D.N.J. Dec. 21, 2005).  In this case, the failure to timely move

for reconsideration appears to be the fault of Plaintiff's

counsel and not of any glitch in the electronic filing system.

Plaintiff's counsel has provided no further argument for why the

Court should extend the time for filing a motion for

reconsideration.

Pursuant to Local Civil Rules 6.1(a) and 83.2(b), the Court

may, in its discretion, extend the time for filing a motion for

reconsideration.  In deciding not to do so in this case, the

Court finds that Plaintiff's counsel was properly and timely

notified of the February summary judgment opinion and that no

excuse is provided for failure to timely move for

reconsideration.  Further, although the motion for

reconsideration is not long-delayed, Defense counsel opposes the

extension and there was no attempt to seek an extension of time

for filing the motion before the time to do so expired.  In

addition, the parties are represented by counsel and relaxation

23

of time for reconsideration is not required to prevent surprise
or injustice.  Cf. L. Civ. R. 7.1(h), comment (b)(2) (court has
authority to relax time for reconsideration only in extraordinary
circumstances to prevent surprise or injustice); Skulnik v.
Skulnik, 2007 U.S. Dist. Lexis 22845 (D.N.J. Mar. 28, 2007)
(expressing view that time for reconsideration cannot be relaxed,
pursuant to Fed. R. Civ. P. 59(e)).  For all these reasons, the
Court shall not exercise its discretion to extend the time for
filing a motion for reconsideration and the motion to do so shall
therefore be denied.

> 2.  Court Would Deny Motion for Reconsideration on
>     Merits

Further, the Court finds that the motion for reconsideration
should be denied on the merits.  Thus, even if the Court granted
the motion for an extension of time for filing the proposed
motion for reconsideration, the motion would fail, as explained
below.

> a.  *Reconsideration Standard*

The purpose of a motion for reconsideration "is to correct
manifest errors of law or to present newly discovered evidence."
Harsco Corp. v. Zlotnick, 779 F.2d 906, 909 (3d Cir. 1985), cert.
denied, 476 U.S. 1171 (1986).  Local Civil Rule 7.1(i) requires
that the moving party set forth the factual matters or
controlling legal authority that it believes the court overlooked
when rendering its initial decision.  L. Civ. R. 7.1(i).  Whether

to grant reconsideration is a matter within the district court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  DeLong Corp. v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).  A motion for reconsideration is improper when it is used solely to ask the court to rethink what it has already thought through – rightly or wrongly.  Oritani Savings & Loan Assoc. v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990)(citing Above the Belt v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)), rev'd on other grounds, 989 F.2d 635 (3d Cir. 1993).  Nor is reconsideration warranted when the moving party simply recapitulates the cases and arguments considered by the court prior to rendering its initial decision. Carteret Sav. Bank v. Shushan, 721 F. Supp. 705, 706-07 (D.N.J. 1989).  "[T]he party seeking reconsideration [must show] at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available ...; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

b.   *Pain and Suffering Damages Against Sterling*
     *Defendants*

Plaintiffs assert first that the Court committed an error of law when it determined that the New Jersey Tort Claims Act barred Plaintiffs from recovering damages for pain and suffering on their negligence claims against the Sterling Defendants because Plaintiffs had not demonstrated medical expenses in the amount of $3,600.  Plaintiffs argue that the Court may have "overlooked" Reale v. Wayne Township, 132 N.J. Super. 100, 332 A.2d 236 (Law Div. 1975), which, according to Plaintiffs, permits such claims to proceed if there is a material issue of fact as to whether Michael Ward may incur the $3,600 in expenses in the future.

In the February summary judgment opinion, this Court held that there was no basis for recovering pain and suffering damages against the Sterling High School District Board of Education or the Sterling High School District in this case, because Plaintiffs' counsel conceded that the injuries have not generated medical expenses in excess of the threshold provided in the Tort Claims Act and noted that Plaintiff was not then receiving any medical or psychological treatment related to his alleged injuries.

Under N.J. Stat. Ann. § 59:9-2(d):

> No damages shall be awarded against a public
> entity or public employee for pain and
> suffering resulting from any injury; provided,
> however, that this limitation on the recovery
> of damages for pain and suffering shall not

26

> apply in cases of permanent loss of a bodily
> function, permanent disfigurement or
> dismemberment where the medical treatment
> expenses are in excess of $ 3,600.00. For
> purposes of this section medical treatment
> expenses are defined as the reasonable value
> of services rendered for necessary surgical,
> medical and dental treatment of the claimant
> for such injury, sickness or disease,
> including prosthetic devices and ambulance,
> hospital or professional nursing service.

As the Court noted, Plaintiffs came forward with no evidence of
any expenditures for treatment of Michael Ward's psychological or
mental impairments resulting from the assault and Plaintiffs'
counsel conceded at oral argument that his treatment expenses do
not meet this threshold. (Slip op. at 34.)

In Plaintiffs' opposition to the motions for summary
judgment, they never argued that likely future expenses could be
used to overcome the $3,600 threshold in the Tort Claims Act.
Rather, Plaintiffs argued only about whether permanent
psychological injury could qualify as "permanent loss of a bodily
function, permanent disfigurement or dismemberment," within the
meaning of N.J. Stat. Ann. § 59:9-2(d). While the Court ruled
that psychological injury could qualify under that definition,
the Court granted summary judgment on claims for pain and
suffering against the Sterling High School District Board of
Education and the Sterling High School District because there was
no evidence that "the medical treatment expenses are in excess of
$ 3,600.00," a second requirement under N.J. Stat. Ann. § 59:9-

27

2(d).  Plaintiffs never argued that likely future expenses could be included in the calculation and never cited Reale v. Wayne Township, to this Court, in any of the briefs or in oral argument.  Of course, that 1975 trial court decision had been published well before this motion was adjudicated, and thus it does not present a change in controlling law that the parties would be entitled to bring to the Court's attention for the first time on reconsideration.  See Polizzi Meats v. Aetna Life & Cas. Co., 931 F. Supp. 328, 340 (D.N.J. 1996) (lower court decisions not binding on federal court in diversity and thus not "controlling" decisions requiring reconsideration under L. Civ. R. 7.1(i)).

In arguing that the Court "overlooked" Reale, Plaintiffs fail to acknowledge that they never presented the case - or the argument about future expenses – to the Court.  Failure of a party to argue a case that was supportive of its position does not provide grounds for reconsideration.  Local Civil Rule 7.1(i) "explicitly invites counsel to draw the court's attention to decisions which may have been overlooked by the court, not those which were overlooked by counsel."  Polizzi Meats, 931 F. Supp. at 339.  Thus, as in other cases where courts properly deny reconsideration, "Plaintiff's argument regarding th[is] 'overlooked' case[] falls afoul of the admonition to confine the grounds for reconsideration to matters previously presented to,

28

but overlooked by, the court on the original motion." <u>Feit v.</u>
<u>Great-West Life & Annuity Ins. Co.</u>, 460 F. Supp. 2d 632, 644
(D.N.J. 2006).

Plaintiffs submitted four briefs in the course of the
summary judgment motion practice that addressed the availability
of pain and suffering damages under the Tort Claims Act: two in
opposition to the Defendants' motions for summary judgment, and
two in support of their own.  Plaintiffs never presented an
argument that likely future medical expenses could be considered
for purposes of reaching the threshold in N.J. Stat. Ann. § 59:9-
2(d).  Nor did Plaintiffs' counsel do so at oral argument,
despite extensive questioning by this Court on whether there was
any basis in the record for finding that this threshold was met.
Instead, Plaintiffs' counsel conceded that there was none.
Accordingly, if the Court granted the motion for leave to file a
motion for reconsideration, the Court would deny the motion for
reconsideration.

For all the reasons discussed above, the Court must deny the
motion for leave to file a motion for reconsideration as to the
decision on pain and suffering damages.  The Court gave ample
consideration to the arguments the parties presented and is not
bound to alter its decision because of the belated presentation
of an alternate legal theory.

**IV.   CONCLUSION**

The Court shall grant the motion to exclude the expert opinion of Mr. Rappucci as it is expressed in his report.  His opinion that Michael Ward would have been a high school teacher but for Defendants' misconduct is not reliable because it fails to account for Michael Ward's pre-injury capabilities and other evidence in the record that likely impacted the possibility of such future employment.  This exclusion is without prejudice to receiving testimony at trial from Mr. Rappucci, if needed, to explain how to quantify the economic losses suffered by one who fails to graduate high school.

The Court shall deny the motion for leave to file a motion for reconsideration beyond the deadline provided for in the Local Rules.  Although the delay was not long, it is not excusable and, furthermore, the motion for reconsideration would fail on the merits.  An appropriate Order shall be entered.



<u>**June 27, 2008**</u>                              <u>**s/ Jerome B. Simandle**</u>
Date                                    JEROME B. SIMANDLE
                                        U.S. District Judge

30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MICHAEL J. WARD, et al.,

                 Plaintiffs,

     v.

WALTER F. BARNES, et al.,

                 Defendants.

Civil Action No. 05-1850 (JBS)


ORDER


     This matter having come before the Court on a motion in limine by Defendant Barnes to exclude Plaintiff's expert [Docket Item 83], in which Defendants Sterling High School District, Sterling High School Board of Education, David Tannenbaum, Jack McCulley, James Gallagher [Docket Item 85], Steven Gismonde and Jane Gismonde [Docket Item 86] have joined; and on Plaintiffs' motion for leave to file a belated motion for reconsideration of the Court's February 29, 2008 Order and Opinion [Docket Item 123]; the Court having heard oral argument on the motion in limine; and having reviewed the submissions of the parties in support of and in opposition to the motions; for the reasons explained in the Opinion of today's date; and for good cause shown;

     IT IS this   **27th**   day of June, 2008 hereby

     ORDERED that the motion in limine [Docket Items 83, 85, 86] shall be, and hereby is, **GRANTED** without prejudice to Plaintiff's right to seek to admit expert opinion testimony at the Final

Pretrial Conference if circumstances warrant; and

IT IS FURTHER ORDERED that the motion for leave to file a motion for reconsideration [Docket Item 123] shall be, and hereby is, **DENIED.**


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge